**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

R.H., individually and on behalf of
C.H., a student with a disability,

                Plaintiffs,           1:16-CV-551
     v.                                           (GLS/CFH)

BOARD OF EDUCATION OF
SAUGERTIES CENTRAL SCHOOL
DISTRICT,

                Defendant.

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| Office of Benjamin J. Hinerfeld<br>2 Penn Center, Ste. 1020<br>1500 JFK Boulevard<br>Philadelphia, Pennsylvania 19102<br>Attorneys for plaintiffs | BENJAMIN J. HINERFELD, ESQ. |
| Gina DeCrescenzo, P.C.<br>180 South Broadway, Ste. 302<br>White Plains, New York 10605<br>Attorneys for plaintiffs | GINA M. DECRESCENZO, ESQ. |
| Thomas, Drohan Law Firm<br>2517 Route 52<br>Hopewell Junction, New York 12533<br>Attorneys for defendant | DAVID H. STRONG, ESQ. |

**CHRISTIAN F. HUMMEL,
U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION & ORDER

Presently pending before the Court is plaintiff R.H.'s motion in support of the admission of additional evidence not contained within the administrative record. Dkt. Nos. 9-11. Defendant Board of Education of Saugerties Central School District

("District") opposed. Dkt. No. 12-13. Plaintiff filed a reply. Dkt. No. 14. For the reasons that follow, plaintiff's motion to admit the additional document in question is denied.

## I. Background

Plaintiff commenced this action on May 11, 2016 pursuant to 20 U.S.C. § 1415(i)(2)(B) on behalf of his minor son, C.H., a student who has been diagnosed with high-functioning autism. Dkt. No. 1. ("Compl."). A brief review of the facts underlying the administrative proceedings is helpful for the review of the presently-pending motion. Plaintiff seeks reversal of an administrative decision by the New York State Review Officer ("SRO"),[1] dated January 11, 2016, concluding that he failed to demonstrate the appropriateness of C.H.'s private placement to entitle him to tuition reimbursement for the 2014-2015 academic school year. See generally id. Plaintiff determined that C.H.'s placement in a BOCES classroom – a placement determined pursuant to C.H.'s Individualized Education Program – was not proper for C.H., and enrolled him unilaterally at The Ridge School ("Ridge"), a private school for students with high-

---

[1] "'Under the IDEA, school districts must formulate Individualized Education Programs ("IEP") for disabled children, which must include special education and related services designed to meet the student's unique needs. A parent may challenge an IEP by initiating a hearing before an Impartial Hearing Officer . . . , at which point the IHO must determine whether the district has offered the student a FAPE. If the IHO finds that a student has been denied a FAPE, he or she may direct the school district to fund that student's tuition at an appropriately specialized school. An IHO's decision may be appealed to a State Review Officer . . . , and a party aggrieved by an SRO's determination may bring an action challenging that determination in a district court." M.B. v. N.Y. City Dep't of Educ., 14-CV-3455 (LTS/JCF), 2015 WL 6472824, at *1 (S.D.N.Y. Oct. 27, 2015) (internal quotation marks and internal citation omitted).

functioning autism, for the remainder of the 2014-2015 school year.  See Dkt. No. 10 at 1-2.  The Independent Hearing Officer ("IHO") decided in favor of plaintiff.  Compl. at 13-14.

The SRO, following the District's appeal, vacated the IHO decision in part, concluding that there was

> insufficient evidence in the record to conclude that Ridge provided the student with specially designed instruction designed to address the student's social/emotional needs, as opposed to providing a different environment than the one in which he had experienced anxiety . . . Without further evidence, a determination cannot be made regarding whether the services the student received at Ridge addressed the students needs . . . .

Id. at 1 (quoting SRO Dec at 26); SRO Dec at 26.  Addressing this matter further, the SRO noted that

> the hearing record does not indicate that Ridge provided services to affirmatively address the student's anxiety, and thus did not correct the deficiencies in the district's proposed program . . . .  Rather, Ridge provided the student with the types of advantages – including a small class size, with instruction provided at a pace which permitted the student to feel more comfortable – "that might be preferred by the parents of any child, disabled or not."

SRO Dec at 26 (quoting Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 115 (2d Cir. 2007) and citing Doe v. E. Lyme Bd. of Educ., 790 F.3d 440, 451-52 (2d Cir. 2015)). Addressing C.H.'s progress at Ridge, the S.R.O. concluded that, "given the very limited amount of objective information contained in the hearing record documenting the student's progress, the evidence does not support the conclusion that Ridge was appropriate solely based on the progress that the student made there during the 2014-

15 school year." Id. at 27.

In the present motion before the Court, plaintiff seeks the Court to consider documentary evidence from outside of the administrative record – a letter from Monica Meyer, M.D., C.H.'s pediatrician, dated May 9, 2016 ("May 2016 letter"). Dkt. No. 10 at 8-9.

**II. Legal Standard**

The Second Circuit has not yet addressed whether a district court may supplement the administrative record of an Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2)(c), appeal with evidence that post-dates the hearing. Dkt. No. 10 at 3. However, several courts in this Circuit have relied on a First Circuit case, Town of Burlington v. Dep't of Educ. for Comm. of Mass. where the court assessed whether the IDEA permits parties to submit "additional evidence" and under what parameters. 736 F.2d 773 (1st Cir. 1984), aff'd sub nom. Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass., 471 U.S. 359 (1985); see, e.g., Eschenasy v. N.Y.C. Dep't of Educ., 604 F. Supp.2d 639, 649 (S.D.N.Y. 2009); Jordan S. v. Hewlett-Woodmere Union Free Sch. Dist., 08-CV-1446 (LDW/AKT), 2009 WL 910804 (E.D.N.Y. Mar. 31, 2009); Handleman v. Board of Educ. of Penfield Cent. Sch. Dist., 07-CV-6021, 2007 WL 3076970, at *3 (W.D.N,Y. Oct. 19, 2007); Mavis v. Sobol, 839 F. Supp. 968 (N.D.N.Y. 1999) (allowing record to be supplemented in order to "bring the court up to date" on the student's progress since the due process hearing). Further, "[s]everal Circuits have adopted the Burlington standard or cited it with approval" and

4

"the Circuits generally agree that 'the question of what additional evidence to admit in an IDEA judicial review proceeding, as well as the question of the weight due to the administrative findings of fact, should be left to the discretion of the trial court.'" M.S. v. New York City Dep't of Educ.,13-CV-3719 (RRM/VMS), 2013 WL 6028817, at *3-4 (E.D.N.Y. Nov. 13, 2013); Handleman, 2007 WL 3076970, at *3 (discussing the approaches taken in various circuits).

In Burlington, the court references Section 1415 of the IDEA, which provides, "[i]n any action brought under its paragraph, the court . . . shall hear additional evidence at the request of a party . . . ." 20 U.S.C. § 1415(e)(2). The Burlington court concluded that "additional evidence," as set forth in the statute, meant "supplemental" evidence. 736 F.2d at 790. However, the court cautioned that this "does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony; this would be entirely inconsistent with the usual meaning of 'additional.'" Id. The Court further provided

> [t]he reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing. The starting point for determining what additional evidence should be received, however, is the record of the administrative proceeding.

Burlington, 736 F.2d at 790. The Court further set forth that the admission of evidence requires a rebuttable presumption: "a court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the

5

witness did not testify at the administrative hearing, and the conservation of judicial resources." Id. at 791; A.W. v. Board of Educ. of the Walkill Cent. Sch. Dist, 14-CV-1583 (DNH/RFT), 2015 WL 1579186, at *2 (N.D.N.Y. Apr. 9, 2015). Although recognizing that the IDEA "contemplates that the source of evidence generally will be the administrative hearing record, with some supplementation at trial"; the court tempered this finding by indicating that it would reject a rigid rule that would "unduly limit" the trial court's discretion. Burlington, 736 F.2d at 790-91. The trial court must keep in mind that "a relaxed approach to admitting additional evidence undercuts one of the purposes of the due process hearing – developing a complete factual record." Handleman, 2007 WL 3076970, at *5.

The Court agrees with approach set forth in Burlington and applied by many district courts in this Circuit:

> a court should receive additional evidence that the judicial review stage of an IDEA proceeding only if the movant provides a particularized and compelling justification for doing so. This showing should include an explanation both as to why the evidence was not presented at the administrative level and why it is probative of the issues before the court. The probative value of the proposed evidence will of course depend upon the nature of the dispute before the court.

Handleman, 2007 WL 3076970, at *5; Eschenasy, 604 F. Supp. 2d at 649 (holding that, in order to be admissible, "additional" evidence must be "'relevant, non-cumulative, and useful.'") (quoting Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 760 (3d Cir. 1995)).

## III. Analysis

As the availability of the May 2016 letter is not in dispute, the Court must assess whether the May 2016 letter is cumulative, relevant, useful, and necessary.[2] Eschenasy, 604 F. Supp. 2d 649; A.S. v. Trumbull Bd. of Educ., 359 F. Supp.2d 102, 103 (D. Conn. 2004). The District argues that the letter is cumulative because there are five of Dr. Meyer's earlier letters in the hearing record, in addition to Dr. Meyer's detailed hearing testimony. Dkt. No. 12 at 7. Thus, the District contends that the letter "is not new, but is simply a repackaging of various points from her prior letters and testimony[.]" Id. The District argues that "[t]he only new information in the letter pertains to matters not relevant to this proceeding, i.e., the time when C.H. was home schooled during the 2015-2016 school year, the circumstances of his subsequent return to Ridge School for 2015-2016, and other anecdotal comments about Ridge School." Id. at 8. Plaintiff contends that the May 2016 letter is relevant because it speaks to C.H.'s progress at Ridge, which bolsters his argument that Ridge was an appropriate placement. Dkt. No. 10 at 3-6. Plaintiff argues that the letter is not duplicative of material already in the record because it demonstrates post-hearing developments – C.H.'s success at Ridge in the 2015-2016 school year. Id.

The Court agrees with the District that the May 2016 letter is cumulative. See

---

[2] Although a usual consideration is availability, the District does not appear to dispute that the May 2016 letter was unavailable at the time of the hearing. See Dkt. No. 12 at 5. However, even if the District had argued as to availability, the Court would conclude that the letter was unavailable, as it post-dates the hearing, and refers to a period of time after the hearing.

7

Dkt. Nos. 13-1, 13-2, 13-3, 13-4, 13-5.  The earlier letters also detail C.H.'s diagnosis, and his difficulties in various social and school and home-school settings.  Dkt. No. 13-5 at 2-3; Dkt. No. 10 at 8-9.  The November 2014 letter discusses C.H.'s allegedly failed placement through the District in its BOCES program, indicates Dr. Meyer's belief of an appropriate program for C.H., provides a brief background of the program at Ridge, and details C.H.'s experience and apparent success at Ridge following the first two months of his attendance.  Id.  Further, the November 2014 letter sets forth C.H.'s "enthusiasm" to attend school at Ridge, examples of methods used by C.H.'s teacher at Ridge; the apparent improvement in C.H.'s physical appearance, hygiene, confidence level; and his new, positive attitude toward school.  Id. at 2-3.  The November 2014 letter also provides C.H.'s comments that Ridge was welcoming, relaxing, felt like a community and a home, and that he believed those at Ridge were "nice" and "know what they are doing."  Id. at 3.

The May 2016 letter reiterates C.H.'s diagnoses and his struggles in the BOCES setting, briefly mentions his difficulties with home schooling between September 2015 and March 2016, sets out comments C.H. shared about his experience at Ridge from March 2016 through May 2016, and touches on C.H.'s goals and aspirations for his future.  Dkt. No. 10 at 8-9.  The letter sets forth C.H.'s statements that he was able to "follow almost all of the work" at Ridge and ask questions, enjoyed being in a small environment, felt he was more compatible with his Ridge classmates, and felt that there was "more civility" at Ridge than at BOCES.  Id. at 9.  It includes C.H.'s statements that Ridge "made [him] like math," and Dr. Meyer's belief that Ridge "has given him

8

motivation to take care of himself." Id.  Although the May 2016 letter arguably refers to C.H.'s experience at Ridge during the subsequent school year, the anecdotal comments contained within are substantially similar to those in th November 2014 letter.  For example, insofar as the May 2016 letter expresses C.H. near-immediate ability "to return to the school routine" upon transitioning from home-schooling back to Ridge, his quick and positive transition to Ridge is reflected in the November 2014 letter (Dkt. No. 13-5 at 2) ("His father persuaded him to go, saying that he would not force him to stay there.  [C.H.] went that first day and has been going every since.").  Similarly, the November 2014 letter, like the May 2016 letter, also reflects: (1) C.H.'s great enthusiasm for school while attending Ridge ("he now gets up in the morning with enthusiasm for the day ahead."), (2) the fact that he was more confident ("his head was held high and he made good eye contact."), (2) that he took better care of himself after being at Ridge ("[t]his time, he was well kempt"), (3) that he felt comfortable at Ridge and enjoyed it ("It's a house . . . very welcoming"), and (4) that he liked the people there ("people there are nice.").  Dkt. No. 13-5; Dkt. No. 10 at 8-9.

The fact that May 2016 letter comes a year and a half after the statements reflected in the November 2014 and refers to C.H.'s second admission at Ridge does not, without more, render the May 2016 statement substantially distinguishable the November 2014 letter.  Although portions of the May 2016 letter shine additional light into C.H.'s enjoyment of math and his career motivations, something not discussed in the November 2014 letter, it is largely reflective of the same point made in the November 2014 letter – that C.H. enjoys, feels comfortable, is excited about going to

9

school at Ridge, and experiences increased confidence when compared to his experience at BOCES. Id.; Dkt. No. 13-5.[3] That C.H. continued to experience these benefits at Ridge following his return in the following school year does not provide the Court with new or different evidence about his 2014-2015 placement at Ridge. Although evidence of a student's progress at a unilateral placement is relevant to a determination of whether the unilateral placement is appropriate, see, e.g., Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105 (2d Cir. 2007), the apparent progress C.H. experienced in Ridge reflected in the May 2016 letter is already appropriately included within the record. Because the May 2016 letter would serve this same purpose, it does not add any significant information not already in the record and is of little probative value.

Further, admission of the letter could cause further delay in proceeding forward with this case. See generally, Plainville Bd. of Ed. v. R.N., 09-CV-241(RNC), 2009 WL 2059914, at *2-3 (D. Conn. July 10, 2009) (denying the school district's motion to admit additional evidence after concluding the evidence was of "limited probative value" and could cause delay due to discovery on the issue). Unlike the evidence in the record that can provide context to the November 2014 letter, see SRO Dec at 27, there is no context for the May 2016 letter. Should the Court admit the May 2016 letter, unless the

---

[3] As the District points out, the May 2016 letter does not provide "standardized assessments" of C.H.'s progress or any other statements addressing his progress beyond C.H.'s own statements about his continued positive association with Ridge. Dkt. No. 12 at 10 (citing Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 130 (2d Cir. 1998)); see also Frank G., 459 F.3d at 364-65. Plaintiff is correct that test scores and similar objective evidence are not the only methods of evidence that can be used to demonstrate progress or success at a placement, the Court is not denying the letter because of its subjective nature but because it would serve the same purpose as evidence already in the record.

10

Court allows for discovery not previously contemplated, the District will be unable to cross examine Dr. Meyer regarding these statements or otherwise obtain additional evidence relating to the 2015-2016 school year, such as whether C.H. still experienced work refusal at Ridge during the 2015-2016 school year, whether C.H. had altercations with his classmates at Ridge during the 2015-2016 school year. See SRO Dec. at 27. Thus, although plaintiff argues that the letter is relevant regardless of the fact that it addresses the 2015-2016 school year because C.H. is not a "fundamentally different boy" from who he was during the 2014-2015 school year and Ridge is not a "fundamentally different school" than it was, Dkt. No. 15 at 3, this argument misses the mark. Were the Court to admit the letter, it would be entirely without context: there is no evidence presented, nor is there any in the record, addressing C.H. during the 2015-2016 year beyond Dr. Meyer's accounts of C.H.'s anecdotal comments of his experience at Ridge.

Although a few courts have admitted evidence from subsequent school years in order to show a student's progress most of that evidence was in the form of objective evidence, such as report cards, progress reports, assessment and diagnostic test results, and psychiatric reports discussing the student's "condition and treatment."[4] See Jordan S., 2009 WL 910804, at * 2; R.N., 2009 WL 2059914, at *2-3 (allowing for admission of updated psychiatric report and assessment test results, but denying the Board of Education's request to admit as additional evidence behavioral reports – some

---

[4] Although the Jordan S. court found several of the documents requested to be submitted as additional evidence to be admissible, the undersigned observes that Jordan S. contains almost no analysis on this issue. 2009 WL 910804, at * 2-3.

of which pre-dated the relevant school year at issue – because, although they showed the student's continued behavioral problems and the school's tactics to address those problems, "they appear to shed little light on how the student is doing at his new school . . . ."). While evidence such as report cards or standardized test results are not the only evidence that is to be considered when assessing whether a unilateral placement is appropriate, Frank G., 459 F.3d at 364, the May 2016 letter does not provide such useful and noncumulative evidence to assist the Court in assessing whether Ridge was an appropriate placement for C.H. in the 2014-2015 school year.[5] To be clear, the undersigned is not concluding that evidence post-dating the hearing in question that relates to a school year different from the one under review can never be relevant, but that such information would be relevant only insofar as it contains information not already reflected elsewhere in the record. Had the May 2016 letter added evidence that was distinguishable from that already contained in the record – i.e., different from C.H.'s positivity, enthusiasm, and apparently reduced anxiety about his school setting – the undersigned may have found differently.

Accordingly, as the undersigned finds that plaintiff has not overcome the

---

[5] Although plaintiff contends that the May 2016 letter "concisely and directly answers the SRO's concern that there is insufficient evidence concerning the appropriateness of Ridge for C.H,[,]" Dkt. No. 10 at 5, the undersigned observes that the SRO acknowledged evidence in the record that C.H. enjoyed certain aspects of Ridge, such as small class size, but noted that the record the hearing record

> does not indicate that Ridge provided services to affirmatively address the student's anxiety, and thus did not correct the deficiencies in the district's proposed program . . . . Rather, Ridge provided the student with the types of advantages – including a small class size, with instruction provided at a pace which permitted the student to feel more comfortable – "that might be preferred by the parents of any child, disabled or not."

SRO Dec at 26.

rebuttable presumption of foreclosing additional evidence, insofar as plaintiff has failed to demonstrate that the evidence is noncumulative, useful, relevant, and necessary, the motion to admit the May 2016 letter is denied. See Burlington, 736 F.2d at 791.

### IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby **ORDERED** that plaintiff's motion to admit the May 2016 letter, Dkt. No. 10, is **DENIED**; and it is

**ORDERED**, that the Clerk of the Court serve this Memorandum-Decision and Order on parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Dated: January 30, 2017
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge