**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**_____**
**R.H., individually and on**
**behalf of C.H., a student with**
**a disability,**

                                             **1:16-cv-551**
                **Plaintiff /**        **(GLS/CFH)**
                **Counter Defendant,**

         **v.**

**BOARD OF EDUCATION**
**SAUGERTIES CENTRAL**
**SCHOOL DISTRICT,**

                **Defendant /**
                **Counter Claimant.**
**_____**

**APPEARANCES:**               **OF COUNSEL:**

**FOR THE PLAINTIFF /**
**COUNTER DEFENDANT:**
Office of Benjamin J. Hinerfeld     BENJAMIN J. HINERFELD, ESQ.
2 Penn Center, Suite 1020
1500 JFK Boulevard
Philadelphia, PA 19102

Gina DeCrescenzo, P.C.         GINA M. DECRESCENZO, ESQ.
180 South Broadway, Suite 302
White Plains, NY 10605

**FOR THE DEFENDANT /**
**COUNTER CLAIMANT:**
Thomas, Drohan Law Firm       DAVID H. STRONG, ESQ.
2517 Route 52
Hopewell Junction, NY 12533

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff R.H. brings this action—on behalf of himself and his son,

C.H.—against the Board of Education of the Saugerties Central School

District (hereinafter "the District") for relief pursuant to the Individuals with

Disabilities Education Act (IDEA),[1] Article 89 of the New York State

Education Law,[2] Section 504 of the Rehabilitation Act,[3] and Title II of the

Americans with Disabilities Act.[4]  (*See generally* Compl., Dkt. No. 1.)

Plaintiff seeks to overturn a State Review Officer's (SRO) decision denying

him tuition reimbursement after finding that his child's unilateral placement

at a private school was inappropriate.  (*Id.*)  The District filed a

counterclaim that seeks to overturn the portion of the SRO's decision that

found that the educational program and services that the District's

---

[1] *See* 20 U.S.C. §§ 1400-1482.

[2] *See* N.Y. Educ. Law §§ 4401-4410-C.

[3] *See* 29 U.S.C. § 794.

[4] *See* 42 U.S.C. §§ 12131-12165.

Committee on Special Education (CSE) recommended for C.H. during the 2014-15 school term were inappropriate.  (Dkt. No. 5 ¶¶ 114-42.)

The parties have cross-moved for summary judgment.  (Dkt. Nos. 15-18, 19.)  For the following reasons, R.H.'s motion is denied and the District's motion is granted in part and denied in part.

## II.  **Background**

### A.  **Facts**[5]

#### 1.  *C.H.'s Background*

C.H. is a teenage boy diagnosed with autism spectrum disorder and anxiety.  (Def.'s Statement of Material Facts (SMF) ¶¶ 1-3, Dkt. No. 19, Attach 2; Pl.'s Statement of Material Facts (SMF) ¶ 4, Dkt. No. 16.)  R.H. describes his son as fearful, lonely, worrisome, and lacking social skills.  (Pl.'s SMF ¶ 6.)  In third grade, C.H. enrolled in the Saugerties Central School District.  (Def.'s SMF ¶ 1.)  Given C.H.'s disorder, on August 31, 2010, the District's CSE found him eligible for special education services.  (*Id.* ¶ 3; Pl.'s SMF ¶ 4.)

_____

[5] Unless otherwise noted, the facts are undisputed.  Although the normal inquiry as to whether there are any disputed material facts does not apply when a party moves for summary judgment in an IDEA action, *see E.H. v. Bd. of Educ. of Shenendehowa Cent. Sch. Dist.*, No. 1:05–CV–972, 2008 WL 3930028, at *7 (N.D.N.Y. Aug. 21, 2008), *aff'd*, 361 F. App'x 156 (2d Cir. 2009), the court provides citations to the parties' statement of material facts, where they are properly supported by the record, for ease of access.  A complete copy of the administrative hearing record that was before the State Review Board in Appeal 15-10 has been uploaded to the docket.  (Dkt. Nos. 34, 35.)

C.H. attended District schools for the first half of fourth grade (2011-12), before being homeschooled for the remainder of fourth grade and all of fifth grade (2012-13).  (Def.'s SMF ¶¶ 8-9.)  On August 16, 2013, the District's CSE convened to develop an Individualized Education Program (IEP) for C.H. for the 2013-14 school year.  (*Id.* ¶ 14.)  The CSE recommended an 8:1+1[6] special class in a Board of Cooperative Educational Services (BOCES) Management Needs Program (MNP).[7]  (*Id.* ¶ 15.)

C.H.'s Developmental-Behavioral Pediatrician, Dr. Monica Meyer, recommended against placement in a District or BOCES program.  (Pl.'s SMF ¶ 12.)  R.H. thought the overall environment, bullying, disciplinary measures, and teaching techniques associated with the MNP class added to C.H.'s anxiety, which led to school attendance issues.  (*Id.* ¶¶ 18-23.)

Nonetheless, C.H.'s report cards for the first and second quarters of the 2013-14 school year show grades in the 80s and 90s in all courses.  (Def.'s SMF ¶ 28.)  In certain subjects, like reading and writing, C.H. was

---

[6] This ratio meant there were to be eight students assigned to one teacher and one student aide.  (Dkt. No. 19, Attach. 3 at 2.)

[7] The 2013-14 IEP was amended in October 2013 to add individual and small group psychological counseling as a related service, as well as additional academic goals.  (Def.'s SMF ¶ 21.)

even performing above his grade level.  (*Id.* ¶¶ 31-32.)  However, during

his time in the MNP program, C.H. struggled to overcome bullying, (Pl.'s

SMF ¶¶ 16-17), anxiety over disciplinary measures, (*id.* ¶ 22), inability to

complete worksheets, (*id.*), and sensory sensitivities, (*id.* ¶ 21).  C.H.'s

school attendance also began to drastically decline.  (*Id.* ¶19-20; Def.'s

SMF ¶ 43.)

On February 20, 2014, another CSE meeting convened to address

R.H.'s concern regarding C.H.'s lack of progress in reading and

math—notwithstanding that he had advanced to a fifth-grade level in math

by this time, (Def.'s SMF ¶ 33)—and certain teaching techniques used in

the MNP class, (*id.* ¶ 37).  On April 10, 2014, the CSE reconvened to

review C.H.'s current placement and discuss an Asperger Program

Independent Education (APIE) placement offered by BOCES.  (*Id.* ¶ 44;

Pl.'s SMF ¶ 27.)  Ultimately, the CSE recommended that C.H. receive

home instruction for the remainder of the 2013-14 school year, pending

placement in the APIE program for the following year.  (Def.'s SMF ¶ 49.)

The APIE program was created specifically for students on the autism

spectrum and offered weekly counseling services that focused on social

skills, managing stress, and other challenging areas for students like C.H.

(*Id.* ¶¶ 56-62.)

    *2.    2014-15 IEP*

On January 15 and June 4, 2014, the CSE reconvened to further review C.H.'s placement and develop a final IEP for the 2014-15 school year.  (*Id.* ¶¶ 48, 54.)  The IEP developed for the 2014-15 school year recommended the following program and services for C.H.:

    (1) an 8:1+1 special class in the APIE program at BOCES;

    (2) services consisting of small group speech-language therapy and individual psychological counseling;

    (3) modifications consisting of light filters, to reduce the flicker and glare of fluorescent lighting in the classroom, and computer use; and,

    (4) assistive technology consisting of computer software used to make reading and writing more manageable.  (*Id.* ¶ 55.)

    *3.    The Ridge School*

Eventually, R.H. determined that the C.H.'s placement was inappropriate and enrolled him unilaterally at The Ridge School (hereinafter "Ridge")[8] for the remainder of the 2014-15 school year.  (*Id.* ¶ 71.)

Although Ridge was twice denied approval from the Commissioner of

---

[8] Ridge is a private school located in Salt Point, New York.  (Def.'s SMF ¶ 71.)

Education for special education placement, (*id.* ¶ 73), R.H. and Dr. Meyer described it as a small, private school for students with high-functioning autism who did not function well in a traditional school environment, (Pl.'s SMF ¶¶ 32-33).  In 2014-15, there were four students attending Ridge, including C.H.  (*Id.* ¶ 63.)  Two of the students were ninth graders, one was a sixth grader, and C.H. was the only seventh grader.  (Def.'s SMF ¶ 79.) All students were instructed together in all subjects.  (*Id.* ¶ 89.)  At Ridge, students did not receive homework, (*id.* ¶ 92), were skipped over if they declined to read in a given subject area, (*id.* ¶ 90), were taught using outdated materials, (*id.* ¶ 86), had changing schedules during their five-hour school day, (*id.* ¶¶ 87-88), and were not required to make up work that they failed to complete, (*id.* ¶ 91).  The school did not use fluorescent lighting or school bells in an effort to decrease anxiety.  (Dkt. No. 34, Attach. 5 at 591-92.)

Ridge employs two full-time teachers, Linda and Michael Kondor, and five part-time teachers.  (Def.'s SMF ¶¶ 72, 75.)  Ms. Kondor, a special education teacher who has worked at Ridge since 2005, characterized it as an alternative for students suffering from school phobia and deficiencies in focusing, communicating, language processing, and other social skills.

(Pl.'s SMF ¶¶ 39-40, 54-56.)  She also testified that Ridge employed a scaffolding methodology with C.H., wherein instructors started introducing new subject matter slowly, until his competency levels increased at his pace.  (*Id.* ¶ 76; Dkt. No. 34, Attach. 5 at 594-95.)  However, Ridge did not develop any written education plan, behavior plan, or academic goals for C.H.  (Def.'s SMF ¶¶ 102, 104.)  There was also no remedial program created for C.H. to address his areas of deficiency.  (Dkt. No. 34, Attach. 5 at 598.)  Ridge responded to C.H.'s handwriting deficiencies by allowing C.H. to use his personal tablet device to take notes.  (*Id.* at 643-44, 667-68.)  Although Ms. Kondor testified that she removed students from the group for individual instruction related to their special education needs, she did not testify what this specifically entailed for C.H.  (*Id.* at 614-16.)  Ms. Kondor also testified that students regularly went on field trips, which either corresponded with class lessons or helped build their social skills.  (Pl.'s SMF ¶ 82.)

Ms. Kondor, Dr. Meyer, and R.H. all opined that C.H. made progress at Ridge based on various observations.  (*Id.* ¶¶ 38, 85-86, 90-91.)

### 4.    Administrative Review

Following C.H.'s placement at Ridge, R.H. filed a due process

complaint with the District.  (Compl. ¶ 65.)  After six days of proceedings,

the Impartial Hearing Officer (IHO) ruled in favor of R.H.  (*See generally*

Dkt. No. 34, Attach. 8.)  Specifically, the IHO concluded that the 2014-15[9]

proposed placement:

> (1) could not, at the time it was recommended, adequately detail
> such essential elements as the student [to] teacher ratio; (2) did
> not commit to a student profile consistent with [C.H.'s] needs; (3)
> was pedagogically so indeterminate that the family lacked any
> basis at the time they were required to decide about the program
> on which to be able to judge whether it could meet [C.H.'s] needs;
> and (4) would be offered in a setting that had already proven to be
> perceived by [C.H.] as hostile and threatening.

(*Id.* at 56.)  Additionally, the IHO determined that Ridge was an appropriate

unilateral placement.  (*Id.* at 57-64.)  The IHO based his conclusion on the

testimony of Dr. Meyer and Holly Ellison, C.H.'s consulting psychiatrist,

who wrote letters recommending the placement based on its perceived

ability to overcome C.H.'s school aversion problem, (*id.* at 61-62; Dkt. No.

34, Attach. 1 at 80-83, 110-12), as well as based on other testimonial

evidence demonstrating that Ridge provided an "individualized educational

---

[9] The IHO also concluded that the 2013-14 MNP failed to provide C.H. a Free Appropriate Public Education (FAPE) but denied compensatory education services for this time period.  (Dkt. No. 34, Attach. 8 at 56, 63.)  Although the District appealed the entirety of the IHO's findings to the SRO, (*id.*, Attach. 9 ¶ 4 & at 20), the SRO determined that claims regarding the 2013-14 school year were moot, (Dkt. No. 1, Attach. 2 at 11-12).  Although R.H. now requests that the court affirm the IHO's findings that the District failed to offer C.H. a FAPE for the 2013-14 school year, (Compl. ¶ 103), the District's counter claim only seeks reversal of the SRO's decision pertaining to the 2014-15 school year, (Dkt. No. 5 ¶¶ 115, 142).  As such, the court does not address the merits of findings pertaining to the 2013-14 school year.

experience . . . in a setting that is home-like and supportive," which addressed C.H.'s particular disability and was sensitive and responsive to his anxiety, (Dkt. No. 34, Attach. 8 at 58-59).  Moreover, the IHO found that C.H. was making progress academically and emotionally at Ridge.  (*Id.* at 59-60.)  Finally, the IHO found that a balancing of the equities weighed in favor of R.H.'s request for relief.  (*Id.* at 62-63.)

Thereafter, the District appealed the decision to an SRO, who sustained the IHO's decision as it related to the District's failure to provide a Free Appropriate Public Education (FAPE) during the 2014-15 school year, but vacated the IHO decision in part, concluding that there was insufficient evidence in the record to conclude that Ridge provided C.H. instruction specially designed to address his social/emotional needs, as opposed to providing a different environment than the one in which he had experienced anxiety.  (Dkt. No. 1, Attach. 2 at 25, 27-28.)  Instead, the SRO concluded that Ridge merely provided C.H. with the types of advantages that might be preferred by the parents of any child, disabled or not.  (*Id.* at 27.)  Moreover, the SRO concluded that "given the very limited amount of objective information contained in the hearing record documenting [C.H.]'s progress, the evidence does not support the

conclusion that Ridge was appropriate solely based on the progress that [C.H.] made there during the 2014-15 school year." (*Id.*)

## B.  Procedural History

R.H. filed the instant action on May 11, 2016, alleging that the District failed to offer C.H. a FAPE, Ridge was an appropriate placement for C.H., and equitable considerations support an award of reimbursement for C.H.'s placement at Ridge. (Compl. at ¶ 103.) R.H. also requests that this court award him reasonable attorney's fees and costs, (*id.* ¶ 105), and that the court accept additional evidence to supplement the record before the SRO, (*id.* ¶ 101). Magistrate Judge Hummel subsequently declined to consider R.H.'s proffered additional evidence. (Dkt. No. 32.) As such, the record before the court is the same as the administrative hearing record. (Dkt. Nos. 34, 35.)

R.H. filed a summary judgment motion with respect to the IDEA claims, (Dkt. Nos. 15-18), and the District filed a cross-motion for summary judgment on all claims, (Dkt. No. 19).

## III.  Legal Context and Standard of Review

"The IDEA requires New York [S]tate to 'provide disabled children with a [FAPE].'" *M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131,

135 (2d Cir. 2013) (quoting *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 174-75 (2d Cir. 2012)).  As such, a school district, through a CSE, "must produce, in writing, an [IEP] . . . that 'describes the specially designed instruction and services that will enable the child to meet' stated educational objectives and is reasonably calculated to give educational benefits to the child."  *Id.* (quoting *R.E.*, 694 F.3d at 175); *see* 20 U.S.C. § 1414(d).

"If a state fails in its obligation to provide a [FAPE] to a handicapped child, the parents may enroll the child in a private school and seek retroactive reimbursement for the cost of the private school from the state." *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 448 (2d Cir. 2015) (internal quotation marks and citation omitted).  The parent begins this process by "fil[ing] a due process complaint with the D[epartment of Education] seeking review of 'any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child.'"  *A.M. v. N.Y.C. Dep't of Educ.*, 845 F.3d 523, 528 (2d Cir. 2017) (quoting 20 U.S.C. § 1415(b)(6)(A)).  The filing "'triggers an administrative procedure by which the board of education appoints an [IHO] who conducts a formal hearing and fact-finding.  The decision of an IHO may be

12

appealed to [an SRO], and an SRO's decision may be challenged by filing a civil action in state or federal court.'" *Id.* (quoting *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015)); *see* 20 U.S.C. § 1415(i)(2)(A).

The summary judgment stage in an IDEA action "is in substance an appeal from an administrative determination." *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012).  The court's role is to "engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence." *Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372, 385-86 (2d Cir. 2014) (internal quotation marks and citation omitted); *see* 20 U.S.C. § 1415(i)(2)(C)(iii).  However, "[t]he role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed," and "courts must bear in mind the statutory context and administrative judges' greater institutional competence in matters of educational policy." *Hardison*, 773 F.3d at 386 (internal quotation marks and citation omitted).  Accordingly, "federal courts reviewing administrative decisions must give due weight to [state administrative] proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *M.H.*, 685 F.3d at 240

(internal quotation marks and citation omitted).  Notably,"[e]xpertise in an area speaks not only to the ability to reach the right conclusion about a given factual situation but also the ability to discern how much evidence is required to reach a supportable  conclusion at all."  *Hardison*, 773 F.3d at 387.

The analysis of how much deference to afford an administrative judge's decision hinges

> [O]n the kinds of considerations that normally determine whether any particular judgment is persuasive, for example whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court.  But the district court's determination of the persuasiveness of an administrative finding must also be colored by an acute awareness of institutional competence and role.

*M.H.*, 685 F.3d at 244.  Generally, if the IHO and SRO reach conflicting conclusions, the court should defer to the SRO's decision.  *See Hardison*, 773 F.3d at 386.  "Decisions involving a dispute over an appropriate educational methodology should be afforded more deference than determinations concerning whether there have been objective indications of progress."  *M.H.*, 685 F.3d at 244.  Nonetheless, "[a]n assessment of educational progress is a type of judgment for which the district court

14

should defer to the SRO's educational experience, particularly where . . .

the district court's decision was based solely on the record that was before

the SRO." *Matrejek v. Brewster Cent. Sch. Dist.*, 293 F. App'x 20, 21 (2d

Cir. 2008) (internal quotation marks and citation omitted); *see M.H.*, 685

F.3d at 244 ("[t]he district court should afford more deference when its

review is based entirely on the same evidence as that before the SRO[.]").

## IV.  Discussion

### A.  IDEA Claim

#### 1.  Legal Framework

In determining whether a disabled child's parents are entitled to

reimbursement of expenses incurred for placement at a private school, the

court uses the *Burlington/Carter* test.  *See Florence Cty. Sch. Dist. Four v.

Carter ex. rel. Carter*, 510 U.S. 7, 12-13 (1993); *Sch. Comm. of Town of

Burlington v. Dep't of Educ.*, 471 U.S. 359, 370 (1985).  If the District fails

to establish that the student's IEP provided a FAPE, "the parents are

entitled to reimbursement if . . . they establish that their unilateral

placement was appropriate and . . . the equities favor them." *A.M.*, 845

F.3d at 534 (internal quotation marks and citation omitted).

"Parents seeking reimbursement for a private placement bear the

burden of demonstrating that the private placement is appropriate[.]" *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 364 (2d Cir. 2006) (citation omitted). The private school need not meet the IDEA definition of a FAPE, *see* 20 U.S.C. § 1401(9), or meet state education standards or requirements, such as providing certified special education teachers or an IEP. *See Carter*, 510 U.S. at 14; *see also C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 837 (2d Cir. 2014) ("[T]he test for the parents' private placement is that it is appropriate . . . not that it is perfect.") (internal quotation marks and citation omitted). However, aside from these limited exceptions, "the same considerations and criteria that apply in determining whether the . . . District's placement is appropriate should be considered in determining the appropriateness of the parents' placement." *Frank G.*, 459 F.3d at 364. Accordingly, the ultimate issue is whether the placement is "reasonably calculated to enable the child to receive educational benefits." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982).

The Second Circuit has held that "for an IEP to be reasonably calculated to enable a child to receive an educational benefit, it must be likely to produce progress, not regression." *Frank G.*, 459 F.3d at 364 (internal quotation marks and citation omitted). As such, in deciding the

unilateral placement's appropriateness, the court must "examine the record for any objective evidence indicating whether the child was likely to make progress or regress under the proposed plan." *Id.* (internal quotation marks and citation omitted).  Although "[g]rades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit, . . . courts assessing the propriety of a unilateral placement [must] consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs." *Id.* (citation omitted).  Ultimately, the parents must demonstrate that the child's placement provides "educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction." *Rowley*, 458 U.S. at 188-89 (internal quotation marks omitted).  "[C]ourts should not disturb a state's denial of IDEA reimbursement where . . . the chief benefits of the chosen school are the kind of educational and environmental advantages and amenities that might be preferred by parents of any child, disabled or not." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 115 (2d Cir.2007).

    2.    *Analysis of C.H.'s Placement at Ridge*

17

R.H. argues that the IHO correctly concluded that C.H. made progress at Ridge, (Dkt. No. 18 at 10-12), the SRO imposed an improper burden on R.H. in evaluating the appropriateness of his unilateral placement choice, (*id.* at 12-17), and the SRO improperly rejected the IHO's credibility determinations regarding the testimony of Dr. Meyer, Ms. Kondor, and Ms. Ellison, (*id.* at 17-19).

However, a review of the SRO's decision reveals that he applied the proper standard at the second step of the *Burlington/Carter* analysis and considered the totality of circumstances in reaching his conclusion that Ridge was inappropriate for C.H.'s unique needs.  (Dkt. No. 1, Attach. 2 at 24, 26-27.)  Specifically, the SRO found that R.H. failed to meet his burden of establishing the appropriateness of his unilateral placement based on the fact that: (1) Ridge avoided C.H.'s anxiety-related needs rather than addressing them, (*id.* at 25), (2) there was insufficient evidence to demonstrate that Ridge provided specially-designed instruction to address C.H.'s social-emotional needs, (*id.* at 25-26), and (3) there was insufficient objective evidence of C.H.'s progress at Ridge, (*id.* at 27).  In his evaluation, the SRO placed less weight on subjective assessments than the IHO based on what he determined to be a lack of objective evidence to

support R.H.'s claims. (*Compare* Dkt. No. 23 at 9 *with* Dkt. No. 1, Attach. 2 at 26-27.) The SRO grappled with the testimony from witnesses, like Ms. Kondor, regarding the type of needs that were addressed at Ridge, and weighed such testimony against the totality of the evidence. (Dkt. No. 1, Attach. 2 at 26.) He ultimately concluded that the environment at Ridge offered the type of advantages that might be preferred by any child, disabled or not. (*Id.* at 26-27.) The court gives particular deference to the SRO's conclusions regarding the appropriate methodology to address individual educational deficiencies as well as to his assessment of the sufficiency of the evidence relating to C.H.'s progress at Ridge. *See Hardison*, 773 F.3d at 387; *M.H.*, 685 F.3d at 244. Moreover, because the record before the court is the same as the record before the SRO and the SRO's thorough analysis of the second prong of the *Burlington/Carter* test is well-reasoned and persuasive, (Dkt. No. 1, Attach. 2 at 23-27), the court finds further reason to defer to the SRO's conclusion. *See Hardison*, 773 F.3d at 387; *Matrejek*, 293 F. App'x at 21-22. In sum, although R.H. understandably prefers the IHO's decision, the court defers to the SRO's educational experience given his valid reasoning and lack of documentary evidence in the record. *See Hardison*, 773 F.3d at 386-87; *M.H.*, 685 F.3d

19

at 244.

Additionally, an independent review of the administrative record reveals that the SRO's conclusion—that Ridge did not address C.H.'s disability-related needs or provide specially-designed instruction to him—is sufficiently supported by the record.  For instance, the record demonstrates that, if C.H. did not wish to read at Ridge, he was simply skipped over, (Dkt. No. 34, Attach. 5 at 668-69), and if he did not complete assignments, he was not required to make them up or receive any consequences, (*id.* at 596-97, 671-72).  Furthermore, Ridge did not develop any written behavioral plan to address C.H.'s anxiety, (*id.* at 677), provide visual aids as were previously useful, (*id.* at 648), or maintain a set-schedule, (*id.* at 684).  And R.H. presented no evidence regarding the academic goals or education plan set for C.H.  (*Id.* at 662.)

A review of the record also reveals that the SRO's conclusion regarding C.H.'s progress at Ridge is sound.  Notably, there was scant evidence in the record that constituted "objective evidence" of progress, which is preferable in this Circuit.  *See Frank G.*, 459 F.3d at 364, 366. Specifically, as the District points out

[T]he record . . . contains no report cards, progress notes[,] or

> work samples from Ridge . . . nor any testimony concerning what goals or issues were addressed in counseling, occupational therapy[,] or speech-language therapy.  Additionally, Ridge did not conduct any pre[] or post-testing to gauge C.H.'s progress (nor does it assign homework or grades based upon objective measures)[.]

(Dkt. No. 19, Attach. 3 at 19-20 (citing Dkt. No. 34, Attach. 5 at 653-56, 699).)  R.H. did not present any objective evidence in the form of written goals of C.H.'s counseling, (Dkt. No. 34, Attach. 5 at 681), or objective evidence from meetings between C.H.'s therapists and teachers, (*id.* at 628).  Furthermore, there was no standardized assessment of C.H. since his enrollment.  (*Compare id.* at 14, *with id.* at 654-56.)  Instead, the bulk of the evidence of C.H.'s progress was the subjective assessment of R.H., Ms. Kondor, Dr. Meyer, and Ms. Ellison.  (Pl.'s SMF ¶¶ 38, 85-86, 90-91, 96; Dkt. No. 34, Attach. 1 at 80-83, 110-12.)

Although C.H.'s attendance improved, (Dkt. No. 34, Attach. 5 at 604; Dkt. No. 34, Attach. 6 at 839-40), there was also evidence of regression, such as that C.H. had to leave group instruction weekly, (Dkt. No. 34, Attach. 5 at 673), had an altercation with another student that caused his removal from the classroom, (*id.* at 676), and refused to complete work assignments, (*id.*).  Accordingly, the court defers to the SRO's

determination that "more specific information as to the types of services provided to [C.H.] and how those services tied into [C.H.'s] educational progress" was needed to determine if Ridge addressed his unique needs. (Dkt. No. 1, Attach 2. at 26) (internal quotation marks and citation omitted).)

In conclusion, the court defers to the SRO's well-reasoned decision. Although the court sympathizes with C.H.'s uphill battle to receive a meaningful education in a suitable environment, the court is reluctant to substitute its own view of sound educational policy for the more experienced and specialized views of the SRO. *See M.H.*, 685 F.3d at 240; *Gagliardo*, 489 F.3d at 112-13. The record supports the conclusion that R.H. failed to meet his burden of establishing the appropriateness of C.H.'s placement at Ridge given the lack of evidence that the private placement was specially designed to meet his unique needs. Because the court determines that R.H. failed to meet his burden as to the appropriateness of C.H.'s private placement, it need not address steps one or three of the *Burlington/Carter* test. For these reasons, the District's cross-motion for summary judgment is granted with regard to plaintiff's

claims under the IDEA and New York Education Law,[10] and R.H.'s motion for summary judgment is denied with regard to those claims.[11]

## B.   Remaining Claims

R.H.'s claims under Section 504 of the Rehabilitation Act and Title II of the ADA are also summarily dismissed for the reasons stated by the District.  (Dkt. No. 19, Attach. 3 at 23-24 (citing *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 840-41 (2d Cir. 2014); *French v. N.Y. State Dep't of Educ.*, 476 F. App'x 468, 472-73 (2d Cir. 2011)).)

Plaintiffs argue that alleged deliberate inaction and misrepresentations on the part of the District resulted in a "willful or deliberately reckless denial of rights to both C.H. and [R.H.]"[12]  (Dkt. No. 22 at 17-18 (citing Dkt. No. 22, Attach. 1 ¶¶ 115, 133, 141, 144).)  However, the District has effectively rebutted such arguments in its reply.  (Dkt. No.

---

[10] Given that Article 89 of the New York Education Law tracks the IDEA closely and because R.H. does not argue that the District violated state law specifically, but instead appears to acknowledge that both claims rise or fall together, summary judgment in favor of the District on the Article 89 claim is appropriate for the same reasons discussed above.  *See R.C. v. Bd. of Educ. of the Wappingers Cent. Sch. Dist.*, No. 15-CV-5848, 2016 WL 5477747, at *12 n.17 (S.D.N.Y. Sept. 29, 2016), *aff'd sub nom.*, *R.C. ex rel. N.C. v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*, 705 F. App'x 29 (2d Cir. 2017).

[11] Accordingly, the District's challenge to the portion of the SRO's decision affirming the IHO's decision that the District failed to offer C.H. a FAPE for the 2014-15 school year is moot and need not be addressed.

[12] R.H. notes that "[a]lthough the SRO lacks jurisdiction to rule on claims under [the] ADA [and] §[]504, the IHO does not."  (Dkt. No. 28 at 6 n.5.)  As such, it is worth noting that the IHO found that the District acted in good faith despite ultimately determining it denied C.H. a FAPE.  (Dkt. No. 34, Attach. 8 at 57.)

29 at 8-10.)  After reviewing the summaries of the February and June 2014 CSE meetings, (Dkt. No. 34 at 47-49, 73-80), and the recording of the April 2014 CSE meeting, (P Ex. KK:[13] 33:40-34:16, 36:55-38:24), the court agrees that R.H. has presented insufficient evidence to enable a reasonable factfinder to find bad faith or gross misjudgment on the part of the District, even assuming it failed to provide C.H. a FAPE.  For this reason, the District is entitled to summary judgment on these claims.

## V.  Conclusion

WHEREFORE, for the foregoing reasons, it is hereby

ORDERED that plaintiff's motion for summary judgment (Dkt. Nos. 15-18) is DENIED; and it is further,

ORDERED that defendant's motion for summary judgment (Dkt. No. 19) is GRANTED IN PART and DENIED IN PART as follows:

GRANTED as it relates to plaintiff's IDEA claim, Rehabilitation Act claims, ADA claims, and state law claim; and

DENIED AS MOOT in all other respects; and it is further,

ORDERED that plaintiffs' complaint (Dkt. No. 1) is dismissed in its entirety; and it is further

---

[13] "P Ex. KK" is a compact audio disc; which contains two recordings.  (Dkt. No. 35.)

24

**ORDERED** that the decision of State Review Officer Harrington is

**AFFIRMED** to the extent that it found plaintiff's unilateral placement of C.H.

was inappropriate; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

May 21, 2018
Albany, New York

Gary L. Sharpe
U.S. District Judge

25